Madam Clerk, would you please call the next case? 321-0460, People of the State of Illinois, acquitted by Justin Nicolosi v. Quadrants Brown, brought to you by Demetrius Goldfuss. All right, good morning, counsel. Mr. Goldfuss, are you ready to proceed with your argument? Yes, Mr. Attorney. Good morning. I'm Demetrius Goldfuss. I'm from the Office of the State Health Defender and I represent Quadrants Brown. May it please the Court, Mr. Nicolosi. For ours, Mr. Brown was convicted of driving while revoked. Before trial, the trial court ruled as a matter of law that he could raise the affirmative defense of necessity in response to his charge. At trial, Mr. Brown relied on the trial court's pre-trial ruling. During opening statements, defense counsel told the jury that Mr. Brown did, in fact, drive while his license was revoked, but that they should find him not guilty because he drove out of lawful necessity. During the evidentiary phase, the defense elicited evidence in fervor of necessity defense. However, at the close of the evidence, the state filed a motion to reconsider, asking the trial court to reverse course on necessity defense. The trial judge ultimately agreed and ruled that necessity defense is not available to Mr. Brown as a matter of law because the charge in this case was an absolute liability defense. Counsel, wasn't the defense counsel required to know that necessity was not an available defense? I mean, the law in this case is very well established. What if the judge hadn't moved to reconsider? I mean, well, of course it was the defense, but I mean, the problem that I have with this is that the defense counsel should have known that. We disagree with you. The law is certainly not well established. I guess we'll start with talking about Jackson. I'm assuming that's what Your Honor is referring to. In Jackson, the court said that affirmative defenses like insanity and necessity are not available for driving while license revoked because it's an absolute liability defense. That statement was non-binding over the dictum. The defendant in Jackson did not raise an affirmative defense. Necessity was not at issue. That statement by the Jackson court was not holding and it was not a substantive case. The Jackson court only cited one case to support that statement, the appellate court's decision in Keeble v. Avery. Avery did not involve a necessity defense. The appellate court in Avery held that the insanity defense could not be raised for aggravated DUI because it's absolute liability. The appellate court in Avery gave no explanation for this conclusion and it cited zero authority. The only published decisions that I'm aware of that say you cannot raise an affirmative defense for an absolute liability crime are Avery, which again, cited no authority, gave no explanation, and Jackson, which cites Avery. Now, importantly, the Avery decision went against, at the time, a weight of authority in the appellate court on the issue of whether you can raise an affirmative defense to an absolute liability crime. Also, Jackson conflicted with a prior decision from the Supreme Court. In Keeble v. Kite, the Supreme Court held, they didn't hold, but they said, that the affirmative defense of necessity can be raised for a strict liability defense. So Jackson is non-binding. Now, Jackson aside, there is no legal basis to conclude that the affirmative defense of necessity cannot be raised in an absolute liability case. The affirmative defense of necessity is a common law justification defense. It is not a failure of proof defense. So unlike failure of proof defenses, which seek to engage an element of the offense, such as a mens rea element, a justification defense like necessity does not do that. And that is, frankly, black-letter law. You can look at any treatise, you can look at a treatise that's in your library, Lefebvre's subsequent law, it says that. The way the justification defense works, like necessity, is that, as a matter of public policy, when a defendant admittedly commits a crime, meets all the elements of the offense, strict liability or not, the defendant is not punished for that because the defendant's criminal conduct avoided a greater social harm. So there's a public policy defense. In addition to being a common law defense, necessity is also a statutory defense here in Illinois. The plain language of the necessity statute does not limit the necessity defense to particular crimes. It does not extinguish it for absolute liability crimes. That is, plain language necessity applies to all crimes. Now, had the legislature wanted to limit or create exceptions to the necessity defense, saying you should only apply any certain chances or no, you're not going to apply to this crime, the legislature would have said so. And we know that because the legislature has said so for one particular absolute liability crime in particular. I would direct the court's attention to section 24-1.1 of the criminal code. That statute criminalizes both unlawful possession of a weapon by a felon and also unlawful possession of a weapon by a prison inmate. In subsection D of that statute, the legislature extinguished the availability of necessity defense for unlawful possession of a weapon by a prison inmate. It did not do so for unlawful possession of a weapon by a felon. And, of course, we have a case from this court, People v. Gullings, that says necessity defense is available for unlawful possession of a weapon by a felon. So what does this... What you're saying is a strict liability offense? Yes. So what all this tells us is the legislature is perfectly capable and has picked and choose when the affirmative defense of necessity is available for strict liability crimes. And it's available for all strict liability crimes unless the legislature says otherwise. And it has not for driving while licensed or revoked. And the final point that I would make with respect to this claim is making the necessity defense available for driving while licensed or revoked is sensible and is good policy. Because, of course, there may be circumstances where a person who does not have a license, license revoked or suspended, they may have to drive the vehicle in an emergency circumstance to avoid harm to themselves, to others, or to make sure that someone gets emergency assistance if that's the case. For example, you could have a spouse in a domestic abuse relationship  and in that circumstance we shouldn't expect that person to call 911 and wait for the police to show up so the spouse can stab him with a knife. We would hope that if there's a car available, the person would get in the car and remove themselves from that situation. Another example is you could say you have a passenger in a vehicle. Again, the passenger doesn't have a valid license. Suppose the driver suddenly has an emergency medical condition,  are we going to say that, oh, sorry, you don't have a valid license, you can't take that steering wheel, you just have to sit there and wait to get into a car crash and risk injury to yourself or to others? No, I don't think that's what public policy would want. We would want that passenger to grab the steering wheel, get control of the vehicle, and ensure that everyone who's in it, imminent risk of harm, is safe. I have a question. Do you characterize the language in Jackson as oberdictum or judicial dictum? I think your briefs characterize it as oberdictum. It's not only oberdictum, but it's non-binding. Are you saying oberdictum can never be binding? No, I'm not saying that. In circumstances where you don't have a conflicting decision from the Supreme Court, then this court should follow it. But People v. Kite is conflicting because in Kite the Supreme Court said affirmative defense of necessity is available for strict liability offense. Ultimately, the legislature, years later, disagreed, and as I previously explained, they extinguished that defense for unlawful possession of a weapon by a prison inmate. So for these reasons, Project Brown asks that this court hold that the affirmative defense of necessity does apply to drive no one license revoked, and that the court reverse its conviction and remand for proceedings. Now, if this court precludes that that defense is not available to Mr. Brown, he nevertheless asks that you reverse and remand because once the trial court reversed course and precluded him from raising the necessity defense, it erred by not declaring a mistrial sui sponte, and also trial counsel was unaffected by not moving for a mistrial. The decision to continue with the trial after the trial court precluded Mr. Brown from raising the necessity defense, denied Mr. Brown fundamentally fair trial, and declaring a mistrial was a manifest necessity. The court had placed Mr. Brown in untenable position. On the one hand, he had told the jury both in opening statements and in his testimony that he had driven law revoked. On the other hand, he admitted committing the crime, and the court extinguished the only defense that he had prepared. But, counsel, when the state's motion to eliminate was denied, didn't the court specifically say, the court is certainly willing to allow information to come in and then make a determination at the instruction time in regards to whether the instruction was going to be rendered? So didn't they take that risk at that time when they heard that information coming from the court? No. I'll answer your question with two points. I'll read you exactly what the court said. This is on page 44 of the court of proceedings. The court is going to deny the motion to eliminate and consider granting that particular instruction at the appropriate time. So what the court was saying is, the motion to eliminate is denied. As a matter of law, the necessity defense is available. In terms of whether the defendant is entitled to a jury instruction on the necessity defense, that depends on whatever the evidence that's produced. Is there some evidence, that's the standard, of necessity defense to entitle the defendant to a jury instruction? We will deal with that at the appropriate time, at the close of the evidence when we're talking about jury instruction. That's what the court was saying. Now, practically speaking, can a judge always change his mind with respect to any pre-trial decision the judge makes? Sure. But, as we see in Peeble v. Patrick, the appropriate thing to do when you are, when a judge is confronted with a legal question that is important to the defendant, whether it's a defense to be raised at trial, or whether a defendant is deciding whether to take the witness stand or not, am I going to be impeached with prior convictions, the defendant is entitled to a pre-trial ruling on that matter, definitively, and not wait until the middle of trial, or at the end of the trial after the defendant testifies, to get that ruling, because the defendant needs to be able to prepare a defense, needs to be able to decide whether you're going to testify or not, so that there's not any negative repercussions from that. So, that's my answer. But yes, after the trial judge reversed course, a guilty verdict was all but guaranteed. The state, frankly, admits that. I just briefed by saying that the trial judge reversed course. The jury's task was pretty simple, so simple that they were confused, because they were being told that there was going to be this defense, and now there wasn't, and it's... There was a question, was there not, on that issue? Yes. The jury submitted a question. Absolutely. During deliberations, the jury sent the court a question asking about, are there any circumstances when someone who doesn't have a license, without a license, can drive? Because both the prosecutor and defense counsel brought up the necessity of defense during the opening stages, and suddenly they're getting a closing argument not referring to a necessity of defense, and they don't get a jury instruction, and they're wondering what the heck's going on. So, just to conclude, what ultimately happens, the effect of the trial judge's ruling was he deprived, she deprived Mr. Brown of his constitutional right to prepare and present a defense, because the only defense he had prepared was extinguished. He didn't get another one. He should have had an opportunity to regroup and entertain, okay, am I going to plead? Is there another defense that I can argue? Do I even want to testify again? So, mistrial was a manifest necessity. The trial judge erred in not granting mistrial. Defense counsel performed unreasonably by not moving for a mistrial, and as far as prejudice, had defense counsel moved for a mistrial, it's reasonably probable the court would have granted that request. I would note that under Strickland, we are not to consider what the trial judge actually did in this case by not granting a mistrial sua sponte. We presume under Strickland that the judge acts in accordance with law for purposes of assessing prejudice. So, for these reasons, Clodridge-Brown asks that you reverse this conviction and remand for proceedings for that reason as well, and if the court has no further questions, I thank it for its time. Do you have any questions? No. Do you have any questions? No further. Okay, thank you. Mr. Nicolosi. Thank you. Good morning, your honors. May it please the court. Mr. Golthus, the state asks this court to affirm the defendant's conviction and sentence in this case. Regarding Issue 1, as Justice Aldrich, you pointed out, the law is established on this particular issue, and as the state elaborates in its brief, Jackson controls the issue of whether a defendant can raise an affirmative defense to the charge of driving while license revoked. Jackson stated in plain and clear English that such a defense was not available in a DWLR charge. As I argued in my brief, it doesn't matter what we call the language in Jackson. Whether it's important to the decision, like I did argue in my brief, I do believe the language in Jackson is important to the decision. Therefore, it is not a dictum. But if this court decides that it is a dictum, whether it's judicial or obiter, there is plenty of case law that establishes that a statement from a high court without any contrary language has full force and effect. And in this case, there's an absence of any other statement by the Supreme Court regarding whether you can raise an affirmative defense such as necessity to a charge of driving while license revoked. It doesn't exist. Therefore, the state submits that the trial court in this case was required to follow the statement made in Jackson that you could not raise the defense of necessity. Counsel referred to Pupil v. Kite as being a contrary holding. Can you address that? Your Honor, I believe it's not contrary. It was referring to another charge altogether. It was possession of a firearm at a penal institution, I believe. It's too much of a stretch to go from this to that, especially in light of the fact that Jackson specifically was dealing with driving while license revoked. And the state just believes that. Do you mean Jackson was in its comment, no matter what you call it, was referring to drivers while license revoked? Yes, Your Honor. Would you characterize that comment as talking generally about strict liability offenses? Because I think the reason counsel cited Kite is it's just another strict liability offense. So if the comment in Jackson is just a general comment about strict liability offenses and affirmative defenses, then one could argue that Kite is contradictory. If they said in another strict liability offense, the affirmative defense of necessity is appropriate. What do you say? I understand that, Your Honor. I can't sidestep the analogy between the cases, but the fact of the matter is, again, the state's position is that the court in Jackson was dealing with a specific offense involved in this case, and it's just plain as day as far as the state's concerned. When the court says you can't present an affirmative defense of necessity to a charge of driving while license revoked, the state just admits that that appears to be the new state of the law as far as the Supreme Court is concerned regarding the specific issue in this case. So the state admits that this court should affirm the trial court's eventual ruling that the defendant could not present the defense of necessity in this case. Moving on to Issue 2, Mr. Golphis was arguing that the trial court erred because it should have granted a mistrial, and in the alternative, counsel is ineffective for not moving for a mistrial. The state disagrees with both of those positions. I think it's important to observe what the trial court's pre-trial ruling in this case was. The state filed a motion limiting it to prevent the defendant from arguing necessity. The trial court did not, as I believe Mr. Golphis stated, the trial court did not say that the defendant would be able to present the defense of necessity. The court's ruling was not that specific. The court denied the state's motion and then stated, as Justice Davenport stated, that it would wait for more information to come in on this topic before it was going to make its decision. The state admits that language condensed down, says that the court reserved its ruling on this issue until later on in the case. Well, don't you think there's a difference between saying, I will wait to see what evidence comes in to see if the beginning of that instruction is supported by the evidence versus, no, hold on, I read a Supreme Court case that I didn't see during my initial ruling, and I'm saying this defense is not available, period. There's a difference between those two rulings, and I think the second is what happened. You're right, Your Honor, absolutely. But, as Justice Davenport also said, the defendant did accept the risk that this was not an issue that was put to bed at any point pre-trial. He accepted the risk that he was going to go to trial and that this instruction may not have been given, depending on what was presented at trial. So the state submits, regardless of which of those two alternatives the judge took, that the defendant knew what was happening, the defendant defense counsel knew that this issue was not a definitive, oh, yes, you will absolutely be able to present the defense of necessity and go forward with whatever you wanted to present on that. There was absolutely the same. So you think there's a difference between, I'll take the risk, I know what I'm going to testify to on the necessity defense, my defense counsel's done the research, and I think I'll get the instruction, I think I will, versus, at the end, the ruling is, no, I wouldn't even consider that because it was never available to begin with, and I probably should not have led you down the primrose path to begin with. There's a difference there in risk taking. I understand that, Your Honor, and I'm going to, I don't want to sidestep the question, but I want to go back to another, an argument in my brief about how the issue was even presented in the first place by the defense regarding the state's motion in limine. The defense counsel went up and argued that there was a knife involved in this case, and the defendant had told counsel, and I'm paraphrasing, but that the person who was chasing the defendant's vehicle had a knife. That's why the defendant felt the need to drive. So the court heard that, and I think the state, that's a lion's share of the defendant's argument that, hey, there may be some necessity that I needed to drive. This is why I needed to drive. My ex-girlfriend had a knife. So the court then reserved ruling based on that information. Lo and behold, we get to the end of trial, after all the evidence, as I argued in my brief, that that knife was never mentioned. So the state argues, I think it's important, that it looks like the defense misrepresented evidence at the beginning during pretrial negotiations that we even got to the point where the court would reserve a ruling on necessity. The state argues that if that knife was never mentioned, and it probably should have been mentioned, because there was no evidence of the knife, then the court would have probably quashed the argument. So that's a harmless error argument. I made that in my brief, too, Your Honor, yes. So the state submits, there's kind of interweaving considerations here, but the state submits that, number one, necessity should not have been given, and number two, even if there was some sort of error in letting it get to the end of trial before making that definitive ruling, the error is harmless, and a missed trial should not have been granted in any way, shape, or form. Can you address the third issue, the sentencing issue? Yes, Your Honor. Regarding whether they should be remanded or, yeah, I feel pretty strongly about my argument that this record is inadequate to reduce, as the defendant argues that this court should simply enter a Class A DWR LR offense as opposed to remanding for further proceedings. Regarding whether there should be a Class 2, the state submits this record is simply inadequate to make that determination at this point. We don't know if defendant's license had been revoked at the time of this offense for DUI or the other couple underlying reasons for DUI that would trigger a Class 2. We have no idea if the 15 prior driving on license revoked convictions were for those three, the 401, or 501, or 501.1. We simply don't know. The abstract is, of course, as bare bones as it could possibly be. It's one line. It's unbelievable. I've never seen an abstract. For multiple convictions, it is one line at the top of a piece of paper. Yeah. I've never seen anything like that, Your Honor. I think we need to flush all of the history, get a real driving abstract. This could probably be many pages long. I believe it's 44. So it's a better suit for post-conviction proceedings where a record could be developed? Sure, Your Honor. That would be a good jumping off point as well. I think getting counsel involved and having you talk to counsel a little bit more and figuring out things. But at the very least, it could be remanded for a proper consideration by the trial judge of whether defendant was eligible for Class 2 DWLR. With that, if there are any other questions, that's all I have. If there are any other questions, I'd be happy to answer them. Any questions? No. No more. Okay. Thank you very much. Thank you. All right. Mr. Koufos. I'll just pick up with a question that Justice Davenport asked. We have a PSI that is pretty lengthy, detailing all of the prior traffic offenses. The only one that was contained within the record was the last page, which was one sentence. In terms of a driving abstract? Correct. But we still have the PSI. I understand. And it lists all the offenses, driving on revoked, driving while suspended. Now, if he has a prior offense for driving while suspended, after his license was revoked for DUI, that suggests that the license that has been revoked has been reinstated, so that he has no longer been revoked at the time of the offense. Now, if the state disagrees with that, why didn't they bring that up in a trial court? Quadric Brown has been sent to prison for eight years. His PSI was sufficient at the time of sentencing, but suddenly now it doesn't present accurate information or enough information. Did you bring that information to the attention of the trial court? No. The PSI? No. And I'll be frank. Defense counsel invited this error. The state has forfeited that argument. So, I mean, there's fault on everyone, but the fact remains we have a PSI, and no one below contested his accuracy. And the PSI demonstrates that he was not revoked for DUI at the time of his offense. Just looking at his PSI and his history, it's not possible. Getting back to the first issue concerning... I'm sorry, could you say that again about the PSI? Sure. The PSI shows that after he was revoked for the DUI in 2003, he had been convicted of driving while suspended with a license. In three and four and then five. Correct. Okay. So my argument is that a revoked license cannot be suspended. A revoked license is a non-existent license. So if you have a conviction for driving while suspended, if you have a conviction for driving while revoked, then driving while suspended, the necessary conclusion from that is that that revoked license was reinstated in order for it to be subsequently suspended. Meaning, by the time of his offense, how many years after the DUI in 2003, his license had been reinstated following a revocation for DUI and he was no longer revoked for the DUI. With regard to Jackson, of course there is a number of decisions as inconsistent with Jackson is height. Justice Peterson, you acknowledged that. Yes, the comment in Jackson was a general comment. And we know that because Jackson involved driving while revoked. The case aside, the case of Avery involved aggravated DUI, two different defenses, different offenses. Avery involved the insanity defense, which wasn't involved in Jackson. So Jackson was a general comment. And when you make a general comment in Jackson and you have a conflicting general comment, people versus height, both of those stand for a proposition that you can't raise an affirmative defense in an absolute liability case. Well, Jackson said that. Height said otherwise. So it's a broad statement. And the only case is that, and the counsel said that, oh, there's plenty of cases, plenty of published decisions showing that you cannot raise an affirmative defense for absolute liability. There's two published decisions. There's Avery and there's height. Everything else says you can. There's some unpublished decisions following Jackson, but that's it. Concerning the second issue, the only risk that Mr. Brown accepted going into trial was that he didn't have the goods for an necessity defense, the warrant and instruction. There was no risk of him not being legally prohibited as a matter of law from being able to raise a necessity defense because the judge told him otherwise. The judge only changed her mind as a matter of law. Now, the stuff about the knife, again, the pretrial ruling was a ruling as a matter of law. The reconsideration ruling was a ruling as a matter of law. Now, counsel suggests, well, it's harmless. There is plenty of evidence of necessity in this case. Look at the video. You have an officer who is pretty angry because there was a high-speed chase right by him and he almost got hit by two vehicles, and he expresses that anger to Mr. Brown and Ms. Turner. You have evidence at trial that Ms. Turner was threatening to kill. She was attacking. She was pitting people in with her vehicle, and she was chasing. That's necessity. So if there are no further questions, again, I thank you, Your Honor. Justice Holbrook, do you have any questions? No. No. I have one question. Sure. If the court were to agree with you on the second issue with regard to that the court should have even sui sponte, granted a new trial based on the change in ruling of law, and it goes back, is your client now stuck with his sworn testimony, correct? If you don't know, that's fine. Let me think. Now what? It goes back to a new trial and assuming, well. . . We can all agree this case is an unusual, very strange case. Well, I think you would have to necessarily address the first issue. Correct. Assuming you would disagree with us on the first issue because you said it back on the second, I think that if there's a retrial, he could choose not to testify. That's true. If he testifies, then, yeah, he would probably testify the same way. Right, okay. Usually a good plan. All right. Thank you both. All right. Court is in recess, and we will issue a decision in due course.